[L. A. No. 287. Department Two.—April 9, 1898.]

## BERI FANNING, Appellant, v. THE CORONADO BEACH COMPANY, Respondent.

DEPOSIT—COLD STORAGE—GROSS NEGLIGENCE—EVIDENCE.—In an action to charge an hotelkeeper, who had taken perishable goods on cold storage, as an accommodation to and at the risk of the depositor, for gross negligence in allowing the temperature of the storageroom to rise, whereby the goods were destroyed, the evidence reviewed, and held insufficient to charge the depositary with liability.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. W. L. Pierce, Judge.

The facts are stated in the opinion.

William H. Fuller, for Appellant.

Gibson & Titus, for Respondent.

BELCHER, C.—The plaintiff brought this action to recover from defendant, a corporation, the sum of eight hundred dollars, the alleged value of one hundred and seventy-one dozen dressed chickens, which had spoiled while in defendant's cold-storage room at Coronado Beach.

The plaintiff based his right to recover upon an alleged contract, entered into on or about October 21, 1895, "by the

terms of which defendant agreed to take said chickens and to securely preserve the same in cold storage until December 25, 1895," and alleged that on representations made by defendant plaintiff was induced to believe, and did believe, that defendant was engaged in the cold-storage business, and that defendant received said chickens "and upon receipt placed the same in said cold-storage rooms and undertook to preserve them until December 25th, unless sooner sold," and that through the failure of defendant to carry out its said agreement the chickens became wholly unfitted for food, and the plaintiff was thereby damaged in the sum named.

The answer denied all the material averments of the complaint, and set up facts, which were found by the court to be true, to the effect that no such contract as that alleged by plaintiff was made between the parties; that the defendant had a cold-storage room for its own use, but was not engaged in the cold-storage business; that at the request of plaintiff he was given permission to place his chickens in the cold-storage room and to let them remain there until the holidays, at his own risk and as an accommodation to him, and he placed them in the room under and by virtue of an agreement made by him that they were to be kept therein at his own sole risk, for which storage he was to pay the same compensation as was charged by cold-storage companies in the city of Los Angeles; that the chickens were placed by plaintiff in the cold-storage room at various times between October 22 and November 13, 1895, and before all of them had been placed therein some of them so placed had begun to spoil and plaintiff had notice of that fact; that the chickens did spoil, but not by reason of the negligence of defendant.

The court below gave judgment for the defendant, from which and from an order denying his motion for a new trial the plaintiff appeals.

It appears that respondent was engaged in conducting a large hotel, known as "Hotel Coronado," in connection with which it had an ice factory wherein it manufactured ice for use in the hotel and for sale. It also had chests and a storageroom for the preservation of meats and poultry for its own use. The cold air in the storageroom was conducted through pipes from the iceroom, and

the difference between the temperatures of the two rooms was usually from sixteen to eighteen degrees. The temperature in the iceroom depended generally upon the amount of ice therein, ranging ordinarily from eight to eighteen degrees above zero. Sometimes the machinery would break or get out of order and then the temperature went higher while it was being repaired. On November 14th the average temperature was twenty-five degrees, on November 25th it was twenty-two degrees, and on November 26th it was twenty-three degrees.

It is claimed for appellant that the respondent was a depositary of the chickens for hire and required to use at least ordinary care for their preservation (Civ. Code, secs. 1851, 1852); that the chickens were well frozen and in good condition up to November 23d, and that thereafter the temperature in the storage-room was negligently allowed to rise to such a degree that they thawed out and became spoiled.

The findings of the court upon this subject were as follows:

"10. That the defendant did not negligently allow the temperature in said cold-storage room to run so high that said chickens, or any of them, thawed out, became tainted by putrefaction, or wholly unfit for food, or were utterly lost."

"11. That the loss of said chickens was not caused wholly, or at all, by the gross and inexcusable, or gross or inexcusable, negligence of defendant."

The bill of exceptions contains no specifications that finding 10 was not justified by the evidence, and the only specifications as to the insufficiency of the evidence to justify finding 11 is that "the evidence shows that the loss of said chickens was caused by negligently permitting the machinery to be run by an incompetent engineer, and thereby permitting the temperature to run up to such a temperature that said chickens spoiled."

Appellant contends that the last-named finding was not justified, and this is the only point made for a reversal. Counsel say: "From an examination of the evidence it will be seen that the chickens were in good condition up to the twenty-third day of November, 1895. That on the evening of the 23d Mr. McIntosh, who is and was the engineer in charge of defendant's works, went to Los Angeles and left the assistant engineer in

charge of the works; that during the time Mr. McIntosh was absent, to wit, November 24th, 25th, and 26th, the temperature ran up at the icehouse or works as follows: November 24th, average temperature at icehouse, fourteen; November 25th, average temperature, twenty-two; November 26th, average temperature, twenty-three; add to this twenty degrees, the difference in temperature between the icechest and the pumpworks, and we find the temperature at the icechest or cold-storage room, during the three days that Mr. McIntosh was away, to be thirty-four, forty-two, and forty-three degrees respectively; and at this temperature the chickens thawed out and spoiled."

This contention cannot be sustained. It is true that one witness testified that the chickens were in good condition up to November 23d, but a clear preponderance of the evidence was to the contrary. Charles Robinson testified that he had been connected with the Hotel Coronado as steward for seven years. He said: "I had a conversation with Mr. Fanning in front of the Domestic Oil Company's store with reference to keeping the chickens in cold storage. I told him my experience was that they would not keep only two or three weeks in there—that it was impossible to do it, because they would not keep for us, and that he had better sell them and realize what he could. He said, 'I can't sell them, and what am I going to do?' I told him it would be a dear experience for him. I first noticed the chickens were spoiling after they were in there about two weeks, I think, after they first commenced putting them in. I think some were spoiling before the last were put in. I told Mr. Fanning the chickens were spoiling. I went in with Fanning and looked at some of the chickens and pointed out some that were soft. I said, 'These chickens are spoiled; some people could use them, but we could not in a hotel. And if you don't take them out, the spoiled ones, it will spoil your good ones.' In about four days he came over and assorted them; at least he told me he had wiped them off and took some away. Chickens could have been kept in this cold-storage room probably two or three weeks. They would not keep there longer than that." Fred McIntosh, the engineer in chief, testified: "I examined chickens while they were in cold storage shortly after they were put there, and

another time about the middle of November; the first time I saw them they were a little slimy; the second time they were pretty well spoiled. I told him (plaintiff's agent) if they got slimy they would begin to spoil." William E. Turner testified that he was storekeeper and had charge of the cold-storage box at the hotel. He said: "Know about the chickens being put in; the temperature in the box during the time the chickens were there would be all the way from thirty to thirty-two, and along there. I noticed the chickens after they were put in; saw them with Mr. Fanning. I noticed they were getting a little slimy. This was before all the chickens were put in. I called their attention to the fact that they were getting slimy." Theodora Lamanna testified that he was "chef at Hotel Coronado" and said: "On the twenty-eighth day of October I saw part of the chickens in the cold room. I picked one up and it was slimy. They were slimy—they were spoiled."

In view of this evidence—and there is more of like import—it is evident that the chickens were not in good condition up to November 23d, and that the theory of appellant as to the cause of the loss cannot be upheld.

Looking, therefore, at all the evidence, we conclude that the findings were justified, and that the judgment and order appealed from should be affirmed.

Britt, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFarland, J., Temple, J., Henshaw, J.